IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.

                                          Case No. 1:24-cr-00371-MLG-1

RAYSHAWN BOYCE,
GABRIELLA TORRES, and
LOUIS ODELL SULLIVAN,

    Defendants.

## ORDER ADDRESSING
## CERTAIN PRE-TRIAL EVIDENTIARY MOTIONS

Defendant Rayshawn Boyce is charged with conspiracy to distribute methamphetamine, possession of with intent to distribute fifty grams and more of methamphetamine, conspiracy to tamper with a witness in a criminal case, and witness tampering. *See* Doc. 75. Boyce and the Government now move for rulings on the admissibility of certain evidence as res gestae and under Federal Rule of Evidence 404(b). *See* Docs. 17; 28; 29; 31; 42; 43. The Government also filed two *James* motions requesting that the Court admit statements made by Boyce and his alleged coconspirators under Federal Rule of Evidence 801(d)(2)(E). *See generally* Docs. 57; 93. The Government's Motion to Introduce and Notice of Intent to Admit Evidence of Coconspirator Statements Pursuant to FRE [sic] 801(d)(2)(E) ("First *James* Motion") addresses statements made between Boyce and Defendant Gabriella Torres, his alleged coconspirator in the charged methamphetamine conspiracy, during a related but uncharged conspiracy to distribute marijuana. *See* Doc. 57. The Government's Second Motion to Introduce and Notice of Intent to Admit Evidence of Coconspirator Statements Pursuant to FRE [sic] 801(d)(2)(E) ("Second *James* Motion") addresses statements Boyce and Defendant Louis Sullivan made in furtherance of their

alleged conspiracy to tamper with witness testimony. *See* Doc. 93.

The Court held a consolidated motions hearing on January 16, 2025, including evidentiary proceedings on the Government's *James* motions. *See* Doc. 113. As explained below, the Court will conditionally admit some—but not all—of the requested res gestae and Rule 404(b) evidence. The Government's First *James* Motion, Doc. 57, will be granted. The Government's Second *James* Motion, Doc. 93, will be granted in part and denied in part.

## DISCUSSION

**I.     Rule 404(b) and Res Gestae Evidence**

In its Notice of Intent to Introduce Evidence as *Res Gestae* and of Prior Bad Acts Pursuant to Federal Rule of Evidence 404(b) ("Notice"), the Government requests a pre-trial ruling on three types of evidence: (1) Boyce's status as an incarcerated defendant at the time of the alleged offenses; (2) his intent to sell drugs to fund his defense in his unrelated criminal case; and (3) his alleged importation of marijuana into the Cibola County Correctional Facility ("Cibola"). *See* Doc. 17 at 2, 9. The Government seeks to admit this evidence as res gestae or as prior bad act evidence under Rule 404(b). *Id.* at 2, 5.

Rule 404(b) limits the admission of evidence related to a defendant's prior crimes, wrongs, or acts but does not limit evidence of acts intrinsic to the charged crime. *United States v. Irving*, 665 F.3d 1184, 1212 (10th Cir. 2011). Intrinsic evidence, also referred to as res gestae evidence, is that which is "part and parcel of the proof of the offense charged in the indictment." *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995) (text only). When evidence is legitimately intrinsic to the charged crime, "there [is] no error in its admission." *United States v. McVeigh*, 153 F.3d 1166, 1203 (10th Cir. 1998). Intrinsic evidence is, of course, subject to the requirement that it cannot be unfairly prejudicial, as established by Federal Rule of Evidence 403. *Irving*, 665 F.3d

at 1212.

While intrinsic evidence is not subject to Rule 404(b), extrinsic evidence of prior crimes, wrongs, or acts is only admissible when it is offered to prove, in relevant part, knowledge and intent. Fed. R. Evid. 404(b)(2) (listing nine exceptions to the general rule). Admission of evidence under Rule 404(b)(2) is governed by the four-factor *Huddleston* test:

> (1) the evidence must be offered for a proper purpose; (2) the evidence must be relevant; (3) the trial court must make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice; and (4) pursuant to [Federal Rule of Evidence] 105, the trial court shall, upon request, instruct the jury that evidence of similar acts is to be considered only for the proper purpose for which it was admitted.

*United States v. Smalls*, 752 F.3d 1227, 1237 (10th Cir. 2014) (citation omitted); *see Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

### A.   Incarceration

At the time of his alleged offenses, Boyce was in custody at Cibola on separate federal charges. Doc. 17 at 3; Doc. 28 at 1. The Government intends to introduce evidence of Boyce's incarceration, namely video of Boyce in the jail and evidence that Torres was a corrections officer at the facility. Doc. 17 at 4. Boyce concedes that he was incarcerated at the time of the indicted conduct but asserts that the Government should be precluded from introducing the underlying reasons for his confinement. Doc. 28 at 3. Indeed, Boyce filed his own motion requesting the Court to "exclude . . . evidence of the name and nature of the prior felony charges and also . . . questions regarding [his] previous charges during cross-examination." Doc. 29 at 3. The Government does not oppose that request but indicates that it will raise the issue if Boyce's previous charges become relevant during trial. *See generally* Doc. 42.

Lacking any substantive dispute, evidence showing that Boyce was incarcerated may be admitted at trial if it complies with all other pertinent evidentiary rules. This evidence is woven

into the fabric of this case; Boyce was in custody at the time of each individual charge, and his conspiracy charges directly relate to alleged communications he made during that period. Boyce's incarceration is thus res gestae to his charged conduct. His prior charges, however, are not intrinsic to this case and have no bearing on the current criminal allegations. As agreed by the parties, evidence related to the nature of Boyce's prior criminal case will not be admitted. *See* Doc. 115 at 126:5-18 (clarifying that there is no disagreement on this point). Should Boyce's prior criminal charges become relevant at trial, the Court reminds the Government that it must notify the Court before attempting to introduce evidence relating to those charges. *See id.* at 126:19-21. The Court will make the appropriate determination at that time.

In short, to the extent the Government's Notice, Doc. 17, seeks a ruling on this issue, the Court finds that evidence showing that Boyce was incarcerated is intrinsic and therefore admissible. Boyce's request to exclude evidence related to his underlying charges, as stated in the relevant motion in limine, Doc. 29, will be granted, subject to revision at trial.

### B. Defense Funds

The Government asks the Court to determine the admissibility of evidence showing that Boyce sold drugs in jail so that he could hire a new attorney. Doc. 17 at 4. But the Government fails to identify or describe the evidence it seeks to admit. *See id.* at 4-6. Lacking anything to evaluate, the Court cannot make a threshold determination of admissibility. Accordingly, the Court will not grant the Government's request and will revisit this issue should it arise at trial.

### C. Marijuana Importation

The Government's third request is to admit evidence that Boyce "participated in the importation of marijuana into the jail on one prior occasion." *Id.* at 2. Raising another res gestae theory, the Government argues that this evidence is intrinsic to the charged drug conspiracy

4

because Boyce and Torres discussed their plan to smuggle marijuana into Cibola in written notes. *Id.* at 5. These discussions are thus "too embedded in the facts" to extract from the alleged methamphetamine conspiracy. *Id.* Next, the Government contends that evidence of the uncharged marijuana conspiracy is admissible under Rule 404(b) to prove Boyce's intent and knowledge in the charged methamphetamine conspiracy. *Id.* at 7. In response, Boyce filed his own motion seeking to exclude evidence of his alleged marijuana smuggling efforts. *See generally* Doc. 31.

The Court is not convinced that evidence of Boyce's prior efforts to smuggle marijuana—a different controlled substance—is inextricable from his current methamphetamine charges. The Government does not explain how Boyce and Torres's communications related to marijuana simultaneously involve methamphetamine, such that evidence of their efforts to smuggle marijuana into Cibola is "part and parcel of the proof" of the charged methamphetamine offenses. *See Kimball*, 73 F.3d at 272. For instance, in statements quoted by the Government, Torres and Boyce clearly discuss marijuana, but it is not apparent that the two discuss their efforts to smuggle any other substance into Cibola, including methamphetamine. *See* Doc. 43 at 2-3 (quoting notes discovered in Boyce's cell that detail his and Torres's plan to bring marijuana into the facility). Accordingly, the Court will not admit this evidence as res gestae and will grant Boyce's motion in limine, Doc. 31, in part.

Rule 404(b), however, requires a different analysis. Boyce's efforts to import marijuana into Cibola are prior criminal acts which fall within the scope of Rule 404(b). Evidence of those acts, which the Government offers to prove knowledge and intent, *see* Doc. 17 at 6, must pass the four-factor *Huddleston* test required by the Tenth Circuit. *See Smalls*, 752 F.3d at 1237.

First, the Government must show a proper purpose to admit evidence of Boyce's marijuana smuggling. *Id.* Simply, the evidence can be admitted to prove Boyce's knowledge and intent under

5

Rule 404(b)(2). Boyce's efforts to import marijuana into Cibola demonstrate that he knew how to smuggle controlled substances into a secure facility, namely by coaching Torres—a corrections officer—on proper techniques for bringing in contraband while avoiding detection. *See* Doc. 43 at 2-3; Doc. 17 at 5 (describing communications between Boyce and Torres). Similarly, Boyce expressly discussed his intent to bring drugs into Cibola in order to distribute them, including an unknown package he expected to turn a profit. *See* Doc. 43 at 3 ("I'm getting a pack together that'll have us both set $$[.]"). There is no mistaking Boyce's intent in these messages: he wanted to smuggle drugs into prison to sell for his and Torres's benefit. The reference to the unknown "pack" that will have both Torres and Boyce "set $$" indicates future intent to continue smuggling drugs into Cibola. *Id.* Accordingly, the first *Huddleston* factor is satisfied.

Second, the marijuana evidence must be relevant. *Smalls*, 752 F.3d at 1237. It is. Boyce's efforts to smuggle marijuana into Cibola are probative of his knowledge of smuggling techniques and prospective intent to continue bringing drugs into the facility to sell for a profit. *See United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000) (recognizing the probative value of similar uncharged acts occurring close in time to the charged conduct). This evidence directly bears on his current charges, which allege that Boyce possessed and conspired to distribute methamphetamine within the correctional facility. And while Boyce makes much of the fact that the marijuana conspiracy is uncharged, Doc. 31 at 3-4, the Tenth Circuit has specifically "recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, so long as the uncharged acts are similar to the charged crime and sufficiently close in time." *Zamora*, 222 F.3d at 762. So, the fact that the Government did not charge Boyce for the marijuana conspiracy does not render it irrelevant to his current methamphetamine charges.

The third *Huddleston* factor requires the Court to "make a Rule 403 determination of whether the probative value of the similar acts is substantially outweighed by its potential for unfair prejudice." *Smalls*, 752 F.3d at 1237. Boyce argues that introducing evidence of his uncharged conduct would be "extremely prejudicial" to his defense. Doc. 28 at 4. But in the context of a Rule 403 analysis, unfair prejudice is that which has "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (quoting Fed. R. Evid. 403 advisory committee's note). Boyce's prior marijuana smuggling is, no doubt, prejudicial to him. It is not unfair, however, because it establishes his knowledge and intent, neither of which suggest that he possessed methamphetamine solely because of his earlier proclivity for marijuana. Rather, it demonstrates that he knew how and intended to smuggle drugs into a secure facility with the help of a corrections officer. Excluding this evidence under Rule 403 would be an "extraordinary remedy" discouraged by the Tenth Circuit. *Id.* (quoting *United States v. Rodriguez*, 192 F.3d 946, 949 (10th Cir. 1999)). The Court thus finds that evidence of Boyce's marijuana smuggling passes muster under Rule 403.

The final *Huddleston* factor—addressing jury instructions under Rule 105—has not been raised by the parties. The Court will consider a request to instruct the jury on the proper use of the Government's Rule 404(b) evidence during trial, should the need arise.

To summarize, evidence of Boyce's uncharged marijuana smuggling actions is admissible under Rule 404(b), provided that it meets the requirements of other relevant evidentiary rules. The Court will grant the Government's Notice, Doc. 17, to the extent it seeks admission of this evidence under Rule 404(b) and deny its request to admit the evidence as res gestae. Similarly, Boyce's motion in limine, Doc. 31, will be granted as to its res gestae argument and denied insofar as it seeks exclusion of Boyce's marijuana smuggling conduct under Rule 404(b). Specific

communications between Boyce and Torres related to the marijuana smuggling are discussed more fully below.

## II.     The Government's First *James* Motion

The Government seeks to admit recorded audio and written conversations between Boyce and Torres to prove the pair's alleged conspiracy to smuggle marijuana into Cibola. *See* Doc. 57 at 2-29. These discussions provide the granular details of Boyce and Torres's efforts. While this evidence is broadly compliant with Rule 404(b), as discussed above, the individual communications include out-of-court statements by Torres offered to prove the existence of the marijuana conspiracy—at first blush, inadmissible hearsay. *See* Fed Rs. Evid. 801(c), 802. Consequently, the Government offers these statements pursuant to Rule 801(d)(2)(E), which establishes that statements made by a "party's coconspirator during and in furtherance of the conspiracy" are not hearsay. *See* Doc. 57 at 29-33. Boyce disagrees, contending that the Government has not made the requisite showing necessary to admit Torres's statements.[1] *See generally* Doc. 61. In light of the record evidence in this case, the Court finds the Government has met its burden under Rule 801(d)(2)(E).

To admit coconspirator statements under Rule 801(d)(2)(E), the Court "must determine by a preponderance of the evidence that (1) a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the [hearsay] statements were made in the course of and in furtherance of the conspiracy." *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017). In determining whether a conspiracy exists, the Court may consider the coconspirator

---

[1] Boyce once again argues that evidence of the marijuana conspiracy is irrelevant to his methamphetamine charges. *See* Doc. 61 at 7-8. As previously discussed, this argument is unpersuasive. Moreover, a coconspirator statement made during a relevant uncharged conspiracy may be introduced under Rule 801(d)(2)(E) "so long as the statement was in furtherance of the uncharged conspiracy." *United States v. Rutland*, 705 F.3d 1238, 1248 n.4 (10th Cir. 2013).

statements the Government seeks to introduce. *See United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996); *Bourjaily v. United States*, 483 U.S. 171, 181 (1987). Coconspirator statements alone are insufficient to establish the conspiracy; there must be some independent evidence confirming its existence. *United States v. Owens*, 70 F.3d 1118, 1124-25 (10th Cir. 1995). Independent evidence is defined as "evidence other than the proffered coconspirator statements themselves." *Id.* at 1125 (text only). This evidence need not be "substantial" so long as it tends to establish the existence of the conspiracy and the defendant's connection to it. *Id.*

Boyce focuses exclusively on the first element. Doc. 61 at 3-6. He argues that the Government has not established the existence of the alleged marijuana conspiracy because the evidence shows that Boyce merely purchased drugs from Torres, not that he conspired with her to import drugs into Cibola for sale and distribution. *Id.* at 3-6. Boyce further asserts that the Government has not produced sufficient independent evidence of the conspiracy and overemphasizes the inculpatory nature of the subject communications. *Id.* at 6-7.

The independent evidence adduced at the January 16 hearing does not support Boyce's position. The Government presented testimony of Federal Bureau of Investigation ("FBI") Special Agent Elia Viramontes, who conducted the criminal investigation in this case. *See* Doc. 115 at 8-40. Viramontes testified that Torres was a guard on Boyce's unit in Cibola, *id.* at 12:18-20 (identifying Torres), and that surveillance video showed the two interacting. *Id.* at 13:7-10 (testifying that Torres would take Boyce to get ice for other prisoners, among other things). Viramontes also testified to the conspiratorial nature of Boyce and Torres's relationship, stating that Torres tipped Boyce off to the search that discovered the methamphetamine. *Id.* at 18:6-8. And, most relevant here, Viramontes participated in a cooperator interview with Torres, who admitted to agreeing with Boyce to bring marijuana into the Cibola facility. *Id.* at 21:18-22. Torres

9

told Viramontes that she bought the marijuana from a dispensary and, at Boyce's direction, packaged it to avoid detection by jail staff and smuggled it into the facility. *Id.* at 22:14-23:3. Torres also detailed marijuana transactions executed via Cash App, *id.* at 25:16-18, 26:12-18, and provided screenshots of the transaction records. *See* Jan. 16, 2024, Hr'g Ex. 34.

In addition to Viramontes' testimony, the Government also provided an executed copy of Torres's plea addendum, which offers a detailed accounting of her relationship with Boyce. Jan. 16, 2024, Hr'g Ex. 83. Torres admitted:

> Mr. Boyce asked me to bring controlled substances into the jail for him. The first item I brought him was marijuana. . . . I obtained the marijuana from an acquaintance of mine who worked at a dispensary. Mr. Boyce instructed me to mask the smell of the marijuana by hiding it in a waterproof bag and put it inside a bag or container of lotion. I did this, and left it for him in a closet on the trash bags.

*Id.* at 1. Torres explained each discussion the Government seeks to admit, providing context and deciphering coded language the two used to discuss their drug schemes. *See id.* at 2-25. Torres specifically described how she and Boyce intended to sell the marijuana for a profit:

> I provided Mr. Boyce with my Cashapp [sic] information so that he could direct people who purchased the marijuana from him to deposit the payments to that account. Mr. Boyce was also discussing all the items we could buy when we made money. These statements made me optimistic that I would profit from the drug sales in [Cibola].

*Id.* at 7.

Torres's coconspirator statements also provide further proof of the alleged marijuana conspiracy. *See Lopez-Gutierrez*, 83 F.3d at 1242 (permitting the Court to consider the coconspirator statements as evidence of the conspiracy). In handwritten notes to Boyce, Torres described her efforts to obtain marijuana from a dispensary to bring into Cibola for him. Doc. 57 at 2. Torres stated that obtaining marijuana was problematic because she was "not old enough to buy cigarettes," but planned to use Cash App transactions to finance the marijuana purchase. *Id.*

at 3. Torres also expressed some trepidation about the scheme because she worried about getting caught by increased security at the facility. *Id.* at 4.

Next, the recorded jail calls are replete with discussions about Torres's efforts to finance, acquire, and smuggle marijuana on Boyce's behalf. For example, Boyce told Torres that she could obtain an ounce of marijuana from his cousin or from another acquaintance who "had some good weed." *Id.* at 6. Boyce and Torres also discussed bringing in "Dominos"—contraband cell phones—so that they could have discussions inaccessible to jail officials. *Id.* at 7. The two later discussed Cash App and other transactions related to the transfer of money for marijuana Boyce sold to other inmates. *Id.* at 11-12. The rest of the recorded conversations run in the same vein, including a call where Boyce explicitly asked Torres to obtain more marijuana from one of her friends. *Id.* at 17-18 ("No you should get you some more, yea [sic] like, get you like two ounces of weed."). These discussions culminated on May 16, 2022, the day before Cibola officials discovered methamphetamine in Boyce's cell block, when Boyce and Torres discussed how she would smuggle a large package of drugs into Cibola and deliver it to Boyce. *Id.* at 27-28.

The evidence presented by the Government is substantial. Viramontes's testimony and Torres's plea addendum are alone sufficient to establish Torres's role in a conspiracy with Boyce to distribute marijuana within Cibola. Taken with Torres's statements to Boyce during the conspiracy, the preponderance of the evidence shows that the two conspired to smuggle marijuana into the facility and then sell it. Accordingly, Boyce's sole challenge to the first element required under Rule 801(d)(2)(E) fails.

The Government has proved each required element by a preponderance of the evidence: (1) the marijuana conspiracy existed; (2) Torres, the declarant, and Boyce, the defendant, were both active participants; and (3) Torres's statements were made in furtherance of and during the

11

pair's efforts to sell marijuana for profit. *See Alcorta*, 853 F.3d at 1137. The Government has met its burden, and Torres's statements may be admitted at trial as coconspirator statements under Rule 801(d)(2)(E).

**III.     The Government's Second *James* Motion**

The Government also seeks to admit statements made by Boyce and Louis Sullivan, Boyce's alleged coconspirator in his attempts to tamper with a cooperating witness, identified as "G.T." *See generally* Doc. 93.[2] The Government identifies three specific types of evidence: (1) text messages from Sullivan to G.T., (2) a transcribed phone conversation between Sullivan and G.T., and (3) statements from Boyce to G.T. attempting to influence her testimony. *Id.* at 5-6.

The third request is easily resolved. Boyce's statements to G.T. may be admitted as statements of a party opponent under Federal Rule of Evidence 801(d)(2)(A). The Government intends to elicit testimony from G.T. describing a phone call she had with Boyce on May 22, 2024, during which Boyce threatened G.T. for testifying against him and instructed her to state that she only smuggled marijuana for him, not methamphetamine. Doc. 93 at 2-3. These statements are not hearsay because the Government intends to offer them against Boyce—the declarant-defendant. *See, e.g.*, *United States v. McElhiney*, 85 F. App'x 112, 115 (10th Cir. 2003) ("Under Rule 801(d)(2)(A) a party's own statement, when offered against him, is not hearsay."); *United States v. DeLeon*, 418 F. Supp. 3d 682, 757 (D.N.M. 2019) ("[R]ule 801(d)(2)(A) permits the prosecution to offer a defendant's out-of-court statement against the declarant-defendant only."). Accordingly, Boyce's statements to G.T. may be offered against him at trial.[3]

---

[2] Boyce did not file a response to the Government's Second *James* Motion. His counsel instead presented argument during the January 16 motions hearing. *See* Doc. 115 at 115:5-117:25.

[3] The Government also contends that Boyce's statements are admissible against Sullivan. Doc. 93 at 14-15. Sullivan's proceedings have been severed, Doc. 112, and the Government does not offer

Sullivan's statements are more complicated. The Government requests the Court admit text messages from Sullivan to G.T., where Sullivan identified himself as "bloodhound" [sic] and told G.T. that "Duce" told him to contact her. Doc. 93 at 3. In this context, "Duce" (also referred to as "Deuce") is an alias for Boyce. *Id.* at 3 n.2; *see* Doc. 115 at 37:20-23. Sullivan then called G.T. and told her that Boyce provided him with G.T.'s number and asked that he tell G.T. to testify that she smuggled marijuana only for Boyce's personal use. Doc. 93 at 3. Sullivan further told G.T. to testify that Boyce brought methamphetamine into the prison because another group of inmates threatened him if he refused to do so. *Id.* at 4. The Government requests that Sullivan's statements be admitted under Rule 801(d)(2)(E) and other hearsay exceptions. *Id.* at 9-14. Further, given the inculpatory nature of Sullivan's communications, the Court presumes that he will invoke his Fifth Amendment rights and will decline to testify at trial.[4] Consequently, the Court will also consider whether admission of these statements would run afoul of Boyce's rights under the Sixth Amendment's Confrontation Clause.

A.   **Confrontation Clause**

Taking the constitutional issue first, the Court finds that the Confrontation Clause is inapplicable in determining whether to admit Sullivan's statements. A defendant's Sixth Amendment confrontation rights bar "testimonial statements of witnesses absent from trial" unless the "declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington*, 541 U.S. 36, 59 (2004). "A 'testimonial statement' is one

---

a full analysis as to how Boyce's statements may be admitted to prove Sullivan's guilt. *See* Doc. 93 at 14. Given that the Government's Second *James* Motion is directed primarily towards Boyce's trial proceedings, the Court declines to rule on how evidence may be offered against Sullivan without further briefing and argument.

[4] Of course, this presumption is not intended to limit Sullivan's defense strategy in any way. The choice to testify is his alone. *United States v. Oakes*, 680 F.3d 1243, 1248 (10th Cir. 2012).

made with the primary purpose of creating evidence for the prosecution." *Alcorta*, 853 F.3d at 1137.

Boyce's confrontation rights are not implicated by Sullivan's statements because the statements are not testimonial. Sullivan did not contact G.T. in order to create evidence for Boyce's prosecution. The substance of those communications shows that Sullivan intended to sway G.T.'s testimony. There is nothing in the statements indicating that they were formal declarations made to prove relevant facts, nor would Sullivan have reasonably or objectively believed that he was making the statements primarily to inculpate Boyce in a future criminal proceedings. *See United States v. Clark*, 717 F.3d 790, 816 (10th Cir. 2013) (discussing the Tenth Circuit's standards for evaluating testimonial statements). Therefore, because Sullivan's statements are not testimonial, their potential admission does not implicate Boyce's Sixth Amendment confrontation rights.

### B.    Rule 801(d)(2)(E)

The Government argues that Sullivan's statements are admissible as coconspirator statements under Rule 801(d)(2)(E) because he and Boyce conspired to tamper with a witness in connection with a criminal case. Doc. 93 at 9-10. Once again, the issue is whether the Government has proffered sufficient evidence to establish the predicate conspiracy by a preponderance of the evidence. It has not.

The Tenth Circuit holds that independent evidence of a conspiracy may be sufficient even if it is not substantial. *Owens*, 70 F.3d at 1125. But there is still a baseline of sufficiency that pertinent authority requires. In *Owens*, for example, testimony from an FBI agent detailing conversations the agent had with individuals who spoke frankly about a drug conspiracy was sufficient to satisfy the government's burden. *Id.* Similarly, in *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021), the Tenth Circuit affirmed that the government met its burden under

Rule 801(d)(2)(E) by presenting informant and grand jury witness testimony establishing the relevant conspiracy. The *Stein* Court also observed that a government agent's testimony regarding his or her own interactions and conversations with coconspirators is adequate independent evidence. 985 F.3d at 1269. District court decisions from this Circuit further demonstrate that independent evidence must provide some solid ground on which to find a predicate conspiracy. *See, e.g.*, *United States v. Richardson*, Case No. 19-20076, 2024 WL 961270, at *17-18 (D. Kan. March 6, 2024) (finding a conspiracy based on informant testimony, audio-video evidence, and phone records); *United States v. Marquez*, No. 2:13-cr-3367, 2016 WL 10720983, at *5-7 (D.N.M. Jan. 15, 2016) (finding a conspiracy in part based on law enforcement testimony detailing information from confidential informants, wiretap evidence, and direct observations of criminal conduct).

Here, Viramontes's testimony—the only independent evidence offered by the Government to prove the witness tampering conspiracy—demonstrates the limits of this standard. During the January 16 hearing, Viramontes testified that G.T. told her Boyce contacted G.T. and attempted to sway her testimony. Doc. 115 at 35:23-36:2. Viramontes also testified that Boyce and Sullivan were housed together in Cibola, *id.* at 37:3-7, and again later in Torrance County Detention Center ("Torrance"). *Id.* at 40:8-10, 85:16-17 ("[T]hey were in Torrance County."). But Viramontes provided nothing more about the nature of Sullivan and Boyce's relationship. On cross-examination, she affirmed that she had no information that they interacted in person, called or wrote messages to each other, or appeared on video together. *Id.* at 85:18-86:3. She also stated that she had no records establishing how Boyce gave Sullivan G.T.'s phone number, other than Sullivan's communications to G.T. *Id.* at 86:10-13. The only other evidence establishing a link between Boyce and Sullivan came in May 2022, when Boyce referred to "Bloodhound" in a call

15

with Torres. *See* Doc. 57 at 22 ("Just call them and just say um, 'Bloodhound said call.'"). So, the independent evidence linking Boyce and Sullivan is limited to testimony that they were incarcerated in Cibola and Torrance together at undefined times, along with a phone call two years prior to the charged witness tampering where Boyce referred to "Bloodhound." This evidence is insufficient to show that the pair directly conspired in their attempts to tamper with G.T.

The Government does not provide any authority, and the Court is aware of none, establishing that testimony showing two coconspirators were housed in the same jail facilities is sufficient independent evidence of a conspiracy in a Rule 801(d)(2)(E) inquiry. Boyce's phone call is similarly weak, given that it occurred two years prior to the charged witness tampering conduct and demonstrates no intent to change any witness's testimony. Critically, Viramontes did not testify as to any direct interactions she had with Boyce or Sullivan establishing a link between the two, in contrast with the agent in *Owens*, 70 F.3d at 1125. The Court also notes that the Government presents considerably less independent evidence as to the witness tampering conspiracy in this case than it does on Boyce's marijuana conspiracy.

To be sure, Sullivan's statements to G.T. are inculpatory and imply that he conspired with Boyce to tamper with G.T.'s testimony. *See* Doc. 93 at 4 ("[S]o [Boyce] was like, Blood just tell [G.T.] uh, to do it . . ., and I was like alright. . . . And that's why I was calling, don't be getting all scared[.]"). But the statements alone cannot establish the conspiracy, and the independent evidence presented is not sufficient under relevant case law. Consequently, on the record before it, the Court finds that the Government has not met its burden to establish the existence of a conspiracy between

Boyce and Sullivan by a preponderance of the evidence. Sullivan's text messages and phone call to Torres may not be admitted under Rule 801(d)(2)(E) at this stage.[5]

### C.   Other Hearsay Exceptions

In the alternative, the Government posits that Sullivan's communications are admissible as statements against penal interest under Federal Rule of Evidence 804(b)(3), or as non-hearsay statements offered to prove their effect on the listener. Doc. 93 at 13-14. Boyce offers no oral or written response to this argument. *See generally* Doc. 115.

"A statement against interest is one that 'a reasonable person in the declarant's position would have made only if the person believed it to be true.'" *United States v. Lozado*, 776 F.3d 1119, 1125 (10th Cir. 2015) (quoting Fed. R. Evid. 804(b)(3)(A)). The statement must be contrary to the declarant's interest, and in the case of a penal interest, must expose the declarant to criminal liability. *Id.* A statement against penal interest is only admissible when it "so far tend[s] to subject the declarant to criminal liability that a reasonable [person] in his position would not have made the statement unless he believed it to be true." *Id.* (quoting *United States v. Chalan*, 812 F.2d 1302, 1311 (10th Cir. 1987)). In applying the reasonable person standard, the Court must consider the declarant's actual state of mind, or, lacking proof thereof, whether "a reasonable person in the

---

[5] The Tenth Circuit requires district courts to hold a *James* hearing or condition admission of coconspirator statements on "forthcoming proof of a predicate conspiracy through trial testimony or other evidence." *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007) (quotation and citation omitted). The Court declines to find that Sullivan's statements are admissible but will not preclude the Government from raising this issue at trial if it provides additional and sufficient independent evidence to prove the existence of the predicate conspiracy.

declarant's position" would believe the relevant statement is against his or her own interest. *Id.* at 1130.

Here, the Government offers no evidence or argument regarding Sullivan's actual state of mind. *See* Doc. 93 at 12-13. And as the Court sees it, there is no indication that Sullivan's communications with Boyce fall within Rule 804(b)(3)'s ambit. His statements are typical of witness tampering, where the communications form the locus of the criminal conduct and are difficult to separate from the declarant's state of mind. In other words, it is not clear that Sullivan would have been inherently aware that the statements were inculpatory. *See Lozado*, 776 F.3d at 1126; *cf. Williamson v. United States*, 512 U.S. 594, 599 (1994) (demonstrating the scope of Rule 804(b)(3) in the context of a confession). For instance, Sullivan did not admit to any distinct crime, nor did he make any statements knowing that he could be exposed to criminal liability. The statements merely evince his intent to sway G.T.'s testimony—the criminal act of witness tampering. Similarly, it is difficult to discern exactly what statements Sullivan believed to be true, given that the entire premise of the conversations was to induce G.T. to lie in her testimony. Lacking clarity on this point, and finding a dearth of pertinent decisional authority in the Government's briefing, the Court will not admit Sullivan's statements under Rule 804(b)(3) at this juncture.

The Government also contends that Sullivan's statements to G.T. are not hearsay because the Government will not offer them for their truth, but to show their effect on G.T. Doc. 93 at 13-14. This argument is more convincing. Testimony is not hearsay when offered to prove that the statement was made, not that it was true. *United States v. Ballou*, 59 F. Supp. 3d 1038, 1058

18

(D.N.M. 2014). Moreover, "[s]tatements offered for the effect on the listener . . . are generally not hearsay." *Faulkner v. Super Valu Stores, Inc.*, 3 F.3d 1419, 1434 (10th Cir. 1993).

As charged in the indictment, Doc. 75 at 2-3, the Government must prove that Boyce and Sullivan attempted to corruptly persuade G.T. with the intent that she change her testimony in Boyce's criminal proceedings. *See* 18 U.S.C. 1512(b)(1). Proof of this crime necessarily requires the subject communications between Sullivan and G.T., since the communications and their intended effect on G.T.—regardless of their veracity—are the criminal means by which Boyce and Sullivan attempted to tamper with G.T.'s testimony. Accordingly, the Court finds that Sullivan's text messages and phone call to G.T. are conditionally admissible for the limited purpose of showing that Sullivan made the statements and intended to influence G.T.'s testimony against Boyce. They are not, however, admissible to prove the truth of any matter asserted within them at this stage. Fed. Rs. Evid. 801(c), 802.

## CONCLUSION

For the reasons stated above, the Court orders as follows:

1. The requests in the Government's Notice of Intent to Introduce Evidence as *Res Gestae* and of Prior Bad Acts Pursuant to Federal Rule 404(b), Doc. 17, are granted in part and denied in part.

2. Boyce's First Motion *in limine* to Exclude Introduction, at Trial, of Name and Nature of Prior Charges and Convictions, Doc. 29, is granted. The Court may revisit this ruling if circumstances at trial so require.

3. Defendant's Second Motion *in limine* to Exclude Introduction, at Trial, of Certain Evidence, Doc. 31, is granted in part and denied in part.

4. The Government's Motion to Introduce and Notice of Intent to Admit Evidence of Coconspirator Statements Pursuant to FRE [sic] 801(d)(2)(E), Doc. 57, is granted.

5. The Government's Second Motion to Introduce and Notice of Intent to Admit Evidence of Coconspirator Statements Pursuant to FRE [sic] 801(d)(2)(E), Doc. 93, is granted in part and denied in part.

The Court's rulings are subject to the conditions set out in this Order.

_____
UNITED STATES DISTRICT JUDGE
MATTHEW L. GARCIA